# Exhibit E

FOCUS - 6 of 10 DOCUMENTS

AMERICAN HIGH-INCOME TRUST, et al., Plaintiffs, v. ALLIEDSIGNAL INC., et al., Defendants.

C.A. No. 00-690 GMS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2002 U.S. Dist. LEXIS 3761

March 7, 2002, Decided

**DISPOSITION:** [*1] Motion to transfer venue GRANTED. Matter TRANSFERRED to the United States District Court for the Southern District of New York.

**LexisNexis(R) Headnotes**

**COUNSEL:** For AMERICAN HIGH-INCOME TRUST, THE BOND FUND OF AMERICA, INC., THE INCOME FUND OF AMERICA, INC., AMERICAN FUNDS INSURANCE SERIES - BOND FUND, AMERICAN FUNDS INSURANCE SERIES - HIGH-YIELD BOND FUND, ANCHOR PATHWAY FUND - HIGH-YIELD BOND SERIES, CAPITAL GUARDIAN U.S. FIXED-INCOME MASTER FUND, CAPITAL GUARDIAN GLOBAL HIGH-YIELD FIXED-INCOME FUND, plaintiffs: Stuart M. Grant, Grant & Eisenhofer, P.A., Wilmington, DE.

For ALLIEDSIGNAL INC., defendant: Kevin Gross, Rosenthal, Monhait, Gross & Goddess, Wilmington, DE.

For NATIONSBANC MONTGOMERY SECURITIES [*2] LLC, PRUDENTIAL SECURITIES, INC., defendants: R. Franklin Balotti, James T. Laster, Richards, Layton & Finger, Wilmington, DE.

**JUDGES:** Gregroy M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregroy M. Sleet

**OPINION:**

**MEMORANDUM AND ORDER**

**I. INTRODUCTION**

On July 31, 2000, American High-Income Trust ("American High-Income"), The Bond Fund of America, Inc. ("Bond Fund"), The Income Fund of America ("Income Fund"), American Funds Insurance ("American Funds"), Anchor Pathway Fund ("Anchor"), Capital Guardian U.S. Fixed Income Master Fund ("Capital Guardian"), and Capital Guardian Global High-Yield Fixed-Income Fund (Capital Guardian Global") (collectively "the plaintiffs") filed suit against AlliedSignal, Inc. ("AlliedSignal"), Nationsbanc Montgomery Securities, LLC ("Nationsbanc"), Prudential Securities, Inc.("Prudential"), Allen K. Breed ("Allen Breed"), Charles J. Speranzella, Jr. ("Speranzella") and Johnnie Cordell Breed ("Breed") (collectively the "director defendants"). The plaintiffs are purchasers of Breed Technologies, Inc. ("Breed Technologies") 9 1/4 percent bonds. In their complaint, the plaintiffs allege that the defendants are liable to them under the federal securities [*3] laws, California statutes concerning misrepresentations in the sale of securities, and common law fraud in connection with the sale of these bonds.

Presently before the court is the direct defendants' motion to dismiss, or in the alternative, to transfer venue. n1 For the reasons that follow, the court will grant the defendant's motion to transfer venue.

n1 Each of the remaining defendants concedes that venue in this district is appropriate with regard to them.

**II. BACKGROUND**

American High-Income, American Funds, and Anchor are Massachusetts business trusts. n2 The Bond Fund and the Income Fund are Maryland corporations. Capital Guardian and Capital Guardian Global are California business trusts. AlliedSignal, NationsBanc and Prudential are Delaware corporations. The director defendants are citizens of Florida. n3

Case 1:05-cv-00189-KAJ    Document 6-8    Filed 06/06/2005    Page 3 of 7

Page 2
2002 U.S. Dist. LEXIS 3761, *

n2 For purposes of addressing this motion, the court will set forth only those facts pertinent to venue. [*4]

n3 The director defendants were directors of non-party Breed Technologies, which is a Delaware Corporation.

On October 30, 1997, Breed Technologies purchased the assets of AlliedSignal's SRS division for $ 710 million. The SRS transaction subsequently closed on October 30, 1997. On August 20, 1998, Breed Technologies issued the 9 1/4 percent bonds (the "Notes"). The Notes were issued through a private placement pursuant to Securities and Exchange Commission Rule 144A. They were marketed exclusively to large, sophisticated, institutional investors through an Offering Memorandum. n4

n4 The Offering Memorandum was prepared in Florida.

Pursuant to the terms of the Offering Memorandum, the Notes were located at NationsBanc's New York offices. They were subsequently delivered at either NationsBanc's New York office or through the Depository Trust Company, also located in New York. Further, IBJ Schroder Bank and Trust Company, [*5] the trustee for the Indenture/Notes, is located in New York. In its capacity as trustee, IBJ Schroder was responsible for sending all payments of interest and principle from New York.

In Spring 1998, NationsBanc led a nationwide road show in an effort to increase interest in the Notes. The road show made stops across the country, including one in Los Angeles, California on April 7, 1998. At that stop, the plaintiffs allege that Speranzella made false statements to prospective purchasers.

On March 9, 1999, Breed filed an amended registration statement with the SEC in order to convert the 9 1/4 percent bonds into instruments that could be freely traded in the public markets. This took place in New York. Both the Notes and Exchange Notes are expressly governed by New York law.

On August 2, 1999, Breed Technologies sued AlliedSignal for fraud in connection with the SRS transactions. That action is currently pending in Delaware state court. On September 20, 1999, Breed Technologies filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code in the District of Delaware. On July 31, 2000, the purchasers of the 9 1/4 percent bonds filed the complaint in the above-captioned lawsuit. [*6]

## IV. DISCUSSION

### A. Venue

Before a district court may hear a case, it must have both personal jurisdiction and venue. See *FS Photo, Inc. v. Picturevision, Inc.*, 48 F. Supp. 2d 442, 444 (D. Del. 1999). None of the defendants argue that the court lacks personal jurisdiction over them. However, although the court has personal jurisdiction over the defendants, it still must decide whether the District of Delaware is the appropriate venue for this action. The plaintiff bears the burden of proving that venue is proper. See *Brautigam v. Priest*, 2000 U.S. Dist. LEXIS 3123, at *8 (D. Del. March 2, 2000).

Four venue statutes control this inquiry. The first two are the specific venue statutes for securities actions, 15 U.S.C. §§ 77v and 78aa. The third venue statute is the general venue statute, 28 U.S.C. § 1391. The fourth is the bankruptcy venue provision, 28 U.S.C. § 1409. The court will address each statute in turn.

### 1. The Securities Venue Act Provisions

Where both Securities Act and Securities and Exchange Act violations are at issue, the broader Exchange Act venue [*7] provision controls. See *Puma v. Marriott*, 294 F. Supp. 1116, 1121 (D. Del. 1969). Venue under the Exchange Act is proper in any district where: (1) "any act or transaction constituting the violation occurred;" (2) the defendant is "found;" (3) the defendant is an inhabitant; or (4) the defendant "transacts any business." 15 U.S.C. § 78aa; see also *Jacobs v. Hanson*, 464 F. Supp. 777, 782 (D. Del. 1979).

On the present facts, it is clear that the director defendants are neither "found" in this district, nor are they "inhabitants" of this district. Indeed, the director defendants themselves have minimal, if any, contacts with Delaware. They were directors of a Delaware corporation, which chose to file its bankruptcy in Delaware. These facts alone are not enough to establish that they themselves "transact any business" in Delaware. See *United Industrial Corp. v. Nuclear Corp. of America*, 237 F. Supp. 971, 980 (D. Del. 1964) (rejecting the argument that directors of a Delaware corporation were transacting business in Delaware).

The plaintiffs' second argument in support of venue is Breed Technologies' alleged dissemination [*8] of materials in Delaware relating to the alleged violation.

However, the fact that SEC filings and related press releases could have been received and read in Delaware is insufficient to find that Delaware is a proper venue for the director defendants. Notably, the plaintiffs do not allege that any of the defendants in the present action received or read anything related to the alleged fraud in Delaware. Nor do they allege that the director defendants took any other action in relation to the alleged fraud in Delaware.

Finally, in the their complaint, the plaintiffs alternatively argue for a co-conspirator venue theory. It is true that "once venue has been established under § 78aa vis-a-vis one defendant, venue is proper with respect to the defendant co-conspirators." *FS Photo, 48 F. Supp. 2d at 445*. However, this theory only applies where venue has been established over one conspirator by reason of an act or transaction performed in the district by that person in furtherance of the conspiracy. *See id*. The plaintiffs in this action have not established that any of the defendants performed an act or transaction in furtherance of the alleged conspiracy in Delaware. [*9] Accordingly, this theory must fail.

Thus, the court concludes that the plaintiffs have failed to meet their burden of demonstrating that venue under the security statutes is proper in Delaware.

### 2. 28 U.S.C. § 1391(a) and (b)

Venue is improper under both Section 1391(a) and (b). n5 First, the defendants clearly do not all reside in the same state. Thus, it is irrelevant if some of the defendants reside in Delaware. *See 28 U.S.C. § 1391(a)(1) and (b)(1)*. Second, as the court discussed above, Delaware is not a state where a substantial portion of the events giving rise to the claims occurred. *See 28 U.S.C. § 1391(a)(2) and (b)(2)*. Indeed, it is doubtful that any part, let alone a substantial part, of the relevant events occurred in Delaware.

> n5 Section 1391(a) is based on diversity jurisdiction actions and Section 1391(b) is based on non-diversity jurisdiction actions. However, their relevant venue requirements are the same. Thus, the court will treat them together.

[*10]

Alternatively, the plaintiffs argue that, as a result of Breed's bankruptcy filing, the books, records and assets are "under the control of [the] court." From this assertion, they then argue that because such items are subject to the jurisdiction of the Bankruptcy Court, they are property "located in" Delaware. This argument is unpersuasive, however, because the "property that is the subject of the action" language in the statute applies only "to suits involving property disputes or in rem actions . . . not to suits alleging financial damages to a corporation." *Falcoal, Inc. v. Turkiye Komur Isletmeleri Kurumu, 660 F. Supp. 1536, 1543 (S.D. Tex. 1987)*.

Accordingly, the court concludes that venue is improper under *28 U.S.C. § 1391*.

### 3. 28 U.S.C. § 1409(a)

Although not alleged as a basis for venue in their complaint, the plaintiffs now argue that venue is proper under *28 U.S.C. § 1409(a)*. n6

> n6 The defendant AlliedSignal joins in this argument.

[*11]

As an initial matter, the court notes that actions for securities violations should be venued in a district with a real connection to the alleged violations or parties, not simply a district where a non-party filed for bankruptcy. Moreover, this action is not sufficiently "related to" Breed Technologies' bankruptcy proceedings. n7 In support of their argument, the plaintiffs and AlliedSignal argue that if the plaintiffs succeed in their claims against the director defendants, and if the director defendants successfully prosecute indemnification claims against Breed Technologies, Breed Technologies would be affected. In similar situations, however, other courts have concluded, that "the present action [] is at most a precursor to [the director defendants'] potential indemnification action against [Breed]." *National City Bank v. Coopers & Lybrand, 1985 U.S. Dist. LEXIS 14244, 1985 WL 6424*, at *5 (D. Minn. Nov. 1 1985), aff'd 802 F.2d 990 (8th Cir. 1986); see also Kalamazoo Realty Venture L.P. v. Blockbuster Entm't Corp., 249 B.R. 879, 885 (N.D. Ill. 2000)*. In such a situation, the cases are not sufficiently related. *See Kalamazoo, 249 B.R. at 885*. [*12]

> n7 The Bankruptcy Court confirmed the reorganization plan on November 22, 2000.

The court thus holds that venue in Delaware is improper as to the director defendants. When venue is improper, the court has two options -- dismissal or transfer. For the reasons that follow, the court will transfer this case to the Southern District of New York. n8

n8 Transfer, rather than dismissal, is in the interests of justice as it prevents the duplication of filing costs and possible statute of limitations problems arising from a dismissal at this point.

**B. Transfer**

As alternative relief, the plaintiffs and AlliedSignal seek to transfer this action to either the Middle District of Florida or the Southern District of New York, respectively. In their briefs, the parties base their transfer arguments on 28 U.S.C. § 1404(a). [*13] Whether Section 1404(a) or 28 U.S.C. § 1406(a) governs is dependant upon whether there was proper venue in the district in which the plaintiff properly brought this action. When venue exists in the district where the suit was filed, Section 1404(a) governs; when venue is improper in the original district, Section 1406(a) governs. See FS Photo, 48 F. Supp. 2d at 449. Because the court has previously determined that venue is improper in the District of Delaware, Section 1406(a) governs this action. The court will nonetheless engage in the balance of convenience analysis applicable to Section 1404(a) due to the dispute as to where the court should transfer this case. n9

n9 Furthermore, the balance of convenience analysis will serve to underscore the court's view that, even were venue proper in this district, this case is better brought in a district with a connection to the alleged securities fraud. As discussed in Section IV.A, *supra*, Delaware clearly has no connection to the facts underlying the alleged fraudulent conduct.

[*14]

Section 1404(a) provides that "for the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer this action to "any other district where it might have been brought." 28 U.S.C. § 1404(a). The parties do not dispute that this action could have been filed in the Southern District of New York or the Middle District of Florida. n10 The court will, therefore, move on with the inquiry as directed by the Third Circuit. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).

n10 Although the plaintiffs suggest in a footnote that "it is not clear" that they could have sued the other defendants in the Middle District of Florida, none of the defendants have made such a claim.

In *Jumara*, the Third Circuit provided a list of factors to assist the district courts in determining "whether, on balance, the litigation would more conveniently proceed and the interests of justice [would] be better served by a transfer to a [*15] different forum." *Id.* These factors include six private and five public interests which the court may consider. *See id.*

1. The Private Interests

The private interests most relevant to this case include: (1) the convenience of the parties as indicated by their relative physical and financial position; (2) the convenience of the witnesses, but only to the extent that they may be unavailable for trial in one of the fora; and (3) the location of records and other documents, again, only to the extent that these files cannot be produced in the alternate forum. n11

n11 For the reasons the court discussed in a previous opinion, it will not afford any weight to the first three *Jumara* factors, specifically, the plaintiff's initial choice of forum, the defendant's preferred venue, and whether the claim arose elsewhere. *See Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 197-201 (D. Del. 1998).* In not affording weight to these factors, the court avoids the risk of double-counting these interests and thereby throwing off the transfer analysis. *See id.* Instead, the court will consider whether the Southern District of New York is a more convenient forum for the parties and the witnesses, while also serving the interests of justice. *See 28 U.S.C. § 1404(a).*

[*16]

a. The Convenience of the Parties

The director defendants reside in Florida. Prudential and Nationsbanc are located in New York City. AlliedSignal is headquartered in Morristown, New Jersey. The plaintiffs are located in California, Maryland and Massachusetts. Thus, five of the parties are located in the Northern-Northeastern United States. Three are located in Florida and one is located on the West Coast. Given these numbers, on balance, New York is the most convenient location for the greatest number of parties.

b. The Convenience of Witnesses

Party witnesses or witnesses who are employed by a

Case 1:05-cv-00189-KAJ   Document 6-8   Filed 06/06/2005   Page 6 of 7

Page 5
2002 U.S. Dist. LEXIS 3761, *

party carry no weight in the "balance of convenience" analysis since each party is able, indeed obligated, to procure the attendance of its own employees for trial. *See Affymeytrix, 28 F. Supp. 2d at 203.* Expert witnesses or witnesses who are retained by a party to testify carry little weight in determining where the "balance of convenience" lies because they are "usually selected [on the basis] of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any." *See* [*17] *id.* (internal citations omitted). Fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the "balance of convenience" analysis. *See id.*

There is no evidence on the record that indicates that one of these districts is more convenient for non-party witnesses than another. AlliedSignal has alleged that the law firms that passed on the validity of the notes are located in New York. The director defendants have also identified several parties as "potential, material third-party witnesses" who reside in Florida. Given this information, the court concludes that this factor must remain neutral.

c. The Location of Records and Other Documents

The technological advances of recent years have significantly reduced the weight of this factor in the balance of convenience analysis. *See id. at 205.* There is no indication that either party would be unable to produce the relevant records and documents in either Florida or New York. Thus, because this factor is only relevant insofar as the documents would be unavailable in one forum, the court finds that this factor must also remain neutral. [*18]

2. The Public Factors

As other courts have noted, depending on the circumstances of the case, some of the "public interest" factors listed in *Jumara* may play no role in the "balance of convenience." *See id. at 205.* The court thus elects to discuss only the factors most relevant to the pending case.

a. Interest in this Controversy

The parties allege that the Offering Memorandum was negotiated in Florida. In contrast, however, the bonds were issued in New York, New York is where the plaintiffs' claims arose, and New York law governs the Offering Memorandum and the Registration Agreement. Thus, the court concludes that New York has a stronger interest in this controversy than Florida.

b. Practical Considerations Making the Trial Easier, More Expeditious, and Less Expensive

As the court discussed above in relation to the convenience of the parties, the majority of the parties are located a comparably short drive from New York. The only parties located in Florida are the director defendants. Thus, it is clear that litigating this action in New York would be collectively less expensive in terms of travel costs.

c. Administrative Difficulty

Statistics from the [*19] Administrative Office of the United States Courts for the twelve-month period ending September 30, 1999 demonstrate that both the New York and Florida courts have approximately nine month median time intervals from filing to disposition. Further, ten percent of the New York court's cases have been pending two to three years, and thirteen percent of the Florida court's cases have been pending two to three years. Given these numbers, the court concludes that this factor neither weighs in favor of, nor against, one district or the other.

V. CONCLUSION

The court concludes that venue is improper in the District of Delaware. Moreover, after engaging in a balance of convenience analysis, it is clear that the balance tips strongly in favor of transferring this action to the Southern District of New York.

For these reasons, IT IS HEREBY ORDERED that:

1. Johnnie Cordell Breed, The Estate of Allen K. Breed, and Charles J. Speranzella, Jr's alternative motion (D.I. 26) to transfer venue is GRANTED.

2. The above-captioned matter is hereby TRANSFERRED to the United States District Court for the Southern District of New York.

3. AlliedSignal's motion to dismiss (D. [*20] I. 16) is declared MOOT.

4. Nationsbanc and Prudential's motion to dismiss (D. I. 19) is declared MOOT.

5. Johnnie Cordell Breed, The Estate of Allen K. Breed, and Charles J. Speranzella Jr.,'s motion to dismiss (D.I. 22) is declared MOOT.

6. The Plaintiffs' motion to lift the discovery stay (D.I. 49) is declared MOOT.

7. The Plaintiffs' motion to substitute defendants (D.I. 65) is declared MOOT.

Date: March 7, 2002

Gregroy M. Sleet

UNITED STATES DISTRICT JUDGE